**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUMMIT TOOL COMPANY | ) | CASE NO. 5:20-cv-1182 |
| dba KEN-TOOL | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| XINKONG USA, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Presently before the Court is the motion of Summit Tool Company d/b/a Ken-Tool ("Ken-Tool" or "plaintiff") for default judgment, statutory damages, injunctive relief, and attorney fees and costs against defendant Xinkong USA Inc. ("XK" or "XK USA" or "defendant") pursuant to Fed. R. Civ. P. 55(b)(2) on Ken-Tool's complaint for trademark infringement, counterfeiting, and unfair competition in violation of the Lanham Act, and for deceptive trade practices and unfair competition under Ohio law. (Doc. No. 1; Doc. No. 14.) Despite having been served with process (*see* Doc. No. 10), defendant neither filed an answer nor responded to the motion and did not seek an extension of time to do either.

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§1331, 1332, and 1338, and supplemental jurisdiction over Ken-Tool's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

For the reasons that follow, Ken-Tool's motion is granted in part and denied in part.

## I.     BACKGROUND

Default having previously been entered against defendant by the Clerk pursuant to Fed. R. Civ. P. 55(a) (Doc. No. 13), the following factual allegations from the plaintiff's complaint are deemed admitted (Doc. No. 1).

Ken-Tool is a corporation organized and existing under the laws of the State of Ohio, having its principal place of business located in Akron, Ohio. Ken-Tool has been in operation for a century and is a leading manufacturer, seller, and supplier of tire service tools, including tubeless tire irons. (Doc. No. 1 ¶¶ 2, 9.) Plaintiff owns United States Federal Trademark Registration No. 1,368,682 for the word "Ken-Tool" in connection with automotive tools, including tire irons ("Word Mark") (*id.* ¶ 10; Doc. No. 1-1), and United States Trademark Registration No. 1,808,834 for the design of a tubeless tire iron ("Product Design Mark") (Doc. No. 1 ¶ 11; Doc. No. 1-2) (collectively the "Ken-Tool Marks").

Plaintiff uses the Ken-Tool Marks in connection with the manufacture and sale of tire service tools. Ken-Tool has expended significant resources promoting and marketing its products bearing the Ken-Tool Marks and those marks have come to be known by the purchasing public and those in the trade as an indicator of high-quality products from Ken-Tool. (Doc. No. 1 ¶¶ 14–16.) Ken-Tool sells tubeless truck tire irons bearing the Ken-Tool Marks under the T45A, T45AC, T45A-2000K, T45AS, T45HD, T46A, and T47A names and marks. Ken-Tool's T45A is sold using the Ken-Tool product number 34645 through a variety of channels, including online sellers, at an average price of about $60.00. (*Id.* ¶¶ 17, 18; Doc. No. 1-3.)

2

XK is a California corporation with its principal place of business in California. XK's address is identified by the California Secretary of State as 2875 S. Reservoir St., Pomona, CA. (*See* Doc. No. 1 ¶ 3.) XK's address on its website—xkautotools.com—is identified as 4451 Eucalyptus Ave 310, Chino, CA.  (*See id*. ¶¶ 3, 31.) Plaintiff alleges that defendant intentionally, willfully, and knowingly, manufactures, promotes, markets and/or sells tire irons bearing the Ken-Tool Marks that are not genuine Ken-Tool products (collectively, "Counterfeit Tire Irons") and does business in Ohio through Amazon.com and on eBay as XK USA. (*Id.* ¶¶ 3, 19, 30.) The Court has personal jurisdiction over defendant under Fed. R. Civ. P. 4 and Ohio's long-arm statute, Ohio Rev. Code § 2307.382(A).[1]

---

[1] Plaintiff alleges that XK's sale of Counterfeit Tire Irons in violation of federal trademark laws has caused injury to plaintiff in the State of Ohio and that XK sells Counterfeit Tire Irons in Ohio. Once default is entered against a defendant, the defendant is deemed to have admitted all the well-pleaded allegations in the complaint, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. and Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)).  Here, plaintiff alleges that the Court has federal question jurisdiction. Where a court has federal question jurisdiction,  "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). With respect to the first prong of the Court's personal jurisdiction analysis, plaintiff's allegations support a finding that defendant's sale of Counterfeit Tire Irons caused tortious injury in Ohio under Ohio's long-arm statute because violations of federal trademark law are analogous to tort cases. *Bird*, 289 F.3d at 876 (citing cases); *see also Noco Co. v. Doe*, No. 1:19-cv-2260, 2020 WL 836757, at *3 (N.D. Ohio Feb. 20, 2020) (finding that where plaintiff Noco alleged that defendant infringed its copyrights and trademarks, and Noco is an Ohio business with its principal place of business in Cuyahoga County, defendant should have reasonably expected that Noco would be injured in Ohio) (citing *Safety Today, Inc. v. Roy*, 2:12-cv-510, 2012 WL 2374984, at *2 (S.D. Ohio June 22, 2012)). With respect to the due process prong of the Court's personal jurisdiction analysis, the level of interactivity of the website is indicative of the existence of purposeful availment. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). Here, plaintiff alleges that, because defendant's sites on Amazon and eBay welcomed business from Ohio and generated sales of the Counterfeit Tire Irons in Ohio, defendant has purposefully availed itself of the privilege of doing business in the state, and plaintiff's cause of action, in part, arises from defendant's sales in Ohio. *See Noco*, 2020 WL 836757, at *4 (personal jurisdiction over a defendant who operates an active website site that transacts or welcomes business from the forum state may be appropriate where plaintiff alleges that defendant's website generates business between defendant and the forum state) (citing *513 Ventures, LLC v. PIV Enter., Inc.*, No. 1:11-cv-573, 2012 WL 995277, at *3 (S.D. Ohio Mar. 23, 2012)); *Zen Design Grp., Ltd. v. Clint*, No. 08-cv-14309, 2009 WL 4050247, at *3 (E.D. Mich. Nov. 23, 2009) (finding purposeful availment in Michigan where seller's posting on eBay expressly indicates that items for sale would be shipped to the "United States, Europe, Canada, Australia"); *see also* Doc. No. 1-

3

In May 2020, defendant, using the eBay seller name "autoequipman" a/k/a Mi Yu, offered for sale on eBay a tire iron advertised as "Ken-Tool 34645." A long-time Ken-Tool customer from Texas purchased the product, believing that it was a genuine Ken-Tool tire iron. (*See* Doc. No. 1 ¶ 22; Doc. No. 14-2 ¶¶ 6, 7.) When the customer received the product, it did not appear to be a genuine Ken-Tool product and the customer shipped the tire iron to Ken-Tool for inspection. Upon inspection, Ken-Tool determined that the tire iron was not a genuine Ken-Tool product because it lacked the markings found on a genuine product and because the round knob piece was welded on the tire iron, as opposed to a single-forged product. The return label for the counterfeit tire iron purchased on eBay from seller autoequipman was directed to "Simon" of XK of 4451 Eucalyptus Ave. in Chino, CA 91710. (Doc. No. 1 ¶¶ 22–24.)

Plaintiff then purchased two tire irons from defendant on eBay advertised as "Ken-Tool 34645," one from an eBay seller using the name "xkautorepair" and another from an eBay seller using the name "autoequipman." The shipping labels on both products purchased by Ken-Tool identified "Simon" of XK at 4451 Eucalyptus Ave. in Chino, CA 91710 as the shipper. Neither of the tire irons purchased by plaintiff from xkautorepair and autoequipman were genuine Ken-Tool products. (*Id.* ¶¶ 25–28.)

---

5 at 2 (autorepairequipments eBay listing: "Ships to: United States and many other countries"). Finding that XK purposefully availed itself of doing business in Ohio and that the instant action arises, in part, from defendant's sales in Ohio, the Court concludes that the exercise of personal jurisdiction over defendant in Ohio is reasonable, thus satisfying the due process component of the Court's personal jurisdiction analysis. *See Zen Design Grp., Ltd.,* 2009 WL 4050247, at *3–4 (finding that the due process component of personal jurisdiction analysis was satisfied and the exercise of such jurisdiction over defendant was reasonable where plaintiff alleged (1) that defendant offered for sale on eBay a pen that infringed plaintiff's patent and sold such pens in Michigan, and (2) that the cause of action, in part, involves forum-related conduct) (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996)).

In addition to the seller names identified above, defendant also sells Counterfeit Tire Irons under seller names: 2016tonyyu1224, funwebsurfer, and autorepairequipments. (*Id.* ¶¶ 29, 30; *see also* Doc Nos. 1-5, 1-6, 1-7, 1-8.) Based upon XK's eBay listings, XK has sold more than 400 Counterfeit Tire Irons to customers in the United States, including Ohio, and its known eBay sales revenue for sales of Counterfeit Tire Irons is $22,353.58. (Doc. No. 1 ¶ 31; Doc. No. 14-5 ¶ 17.)

The Counterfeit Tire Irons are cheaply made and imported from China, and the Better Business Bureau has received multiple complaints from consumers regarding XK. (Doc. No. 1 ¶¶ 20, 35, 36; *see also* Doc. No. 1-4.) Genuine Ken-Tool tire irons are made in the United States using a forging process that produces a stronger and more reliable and long-lasting tool. Defendant, without authorization, is intentionally copying the Ken-Tool Marks, selling Counterfeit Tire Irons in Ohio and other states, and could not "reasonably believe it was selling genuine Ken-Tool tire irons." (Doc. No. 1 ¶ 32.) Defendant is profiting from the success and reputation of Ken-Tool, which will result in monetary loss and damage to Ken-Tool's reputation and goodwill, and defendant is causing mistake, confusion, and deception among customers who believe they are purchasing genuine Ken-Tool products. (*Id.* ¶¶ 31–39.)

Based upon these facts, deemed admitted by defendant's default, plaintiff asserts the following causes of action: (1) trademark counterfeiting under 15 U.S.C. § 1114 for each of the Ken-Tool Marks (*id.* ¶¶ 40–53); (2) unfair competition and trademark infringement of the Ken-Tool Marks under 15 U.S.C. § 1125 (*id.* ¶¶ 54–58); (3) violation of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02 (*id.* ¶¶ 59–64); and (4) common law unfair competition (*id.* ¶¶ 65–69). As a result of defendant's violations of

5

federal and state laws concerning the Ken-Tool Marks, plaintiff's complaint seeks injunctive relief against defendant, monetary damages, attorney fees, and costs. (*Id.* at 13–15.[2])

Defendant failed to answer or otherwise respond to the complaint and, upon application by plaintiff, the Clerk entered default against defendant. (Doc. No. 13.) Thereafter, plaintiff filed the motion for default judgment now before the Court, seeking an injunction prohibiting further acts of infringement by defendant, statutory damages in the amount of $100,000.00, and attorney fees and costs. (Doc. No. 14.) Plaintiff filed a memorandum and twelve exhibits in support of the motion. (Doc. Nos. 14-1 through 14-13.) Although the motion for default judgment was served on defendant at its address of record (*see* Doc. No. 14 at 3), the motion has not been opposed.

## II.  DISCUSSION

### A. Default Judgment—Liability

Fed. Rule Civ. P. 55 governs default and default judgment. Default was entered by the clerk against defendant XK pursuant to Rule 55(a), and plaintiff moved for default judgment pursuant to Rule 55(b)(2). (*See* Doc. Nos. 13 and 14.) After default has been entered, the Court may enter default judgment against the defendant with or without a hearing. Fed. R. Civ. P. 55(b). Based upon the well-pleaded factual allegations in the complaint, and the declarations submitted by the plaintiff in support of the motion, the Court concludes that there is a sufficient basis for determining defendant's liability without the need for a hearing.

---

[2] Page number references are to the consecutive document page numbers assigned to each individual document by the Court's electronic filing system.

While the well-pleaded factual allegations of the complaint are accepted as true for the purpose of determining liability, the Court must still determine whether those facts are sufficient to state a claim for relief with respect to plaintiff's claims for counterfeiting, trademark infringement, deceptive trade practices, and unfair competition, for which the plaintiff seeks default judgment. *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016) (citing *J & J Sports Prods., Inc. v. Rodriguez*, No. 1:08-cv-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citation omitted)); *see also Ultimate Home Protector Pans, Inc. v. Rev-A-Shelf Co., LLC*, No. 3:19-cv-165, 2021 WL 2283770, at *1 (W.D. Ky. Apr. 5, 2021) ("But, '[e]ven if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'") (quoting *Hicks v. Smith*, No. 3:17-cv-251, 2020 WL 5824030, at *1 (W.D. Ky. Sept. 30, 2020) (quoting *Anderson v. Johnson*, 194 F.3d 1311 (Table), 1999 WL 1023753, at *2 (6th Cir. Nov. 4, 1999))). Here, the undisputed allegations in the complaint establish that defendant violated federal and state law with respect to the Ken-Tool Marks.

### 1. Federal trademark counterfeiting (Counts one and two)

Title 15, United States Code, §§ 1114(1)(a) and (b) provide that:

(1) Any person who shall, without the consent of the registrant—

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or

7

> advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

To establish trademark infringement under 15 U.S.C. § 1114, plaintiff must show that: (1) it owns the Ken-Tool Marks; (2) defendant used the Ken-Tool Marks "in commerce" without plaintiff's authorization; (3) defendant used the Ken-Tool Marks, or an imitation thereof, "in connection with the sale, offering for sale, distribution, or advertising" of goods and services; and (4) defendant's use of the Ken-Tool Marks is likely to cause consumer confusion. *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014). "The 'touchstone of liability' for federal trademark infringement claims brought under 15 U.S.C. § 1114 'is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Id.* (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir. 1997) (further citation omitted)).

Counterfeiting is a subset of infringement; even if a mark is infringing, it is not necessarily counterfeit. *Id.* at 910 (citations omitted). The Sixth Circuit explains a counterfeiting claim as follows:

> The Lanham Act prohibits the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale ... of any goods or services [where] such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark

8

knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116. 15 U.S.C. § 1117(b). Section 1116 defines "counterfeit mark" as "a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). Elsewhere, the statute provides additional clarification, defining "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

*Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 425 (6th Cir. 2010).

Based upon the allegations in the complaint, which are deemed admitted by defendant's default, the Court concludes that plaintiff has established the elements required to state a claim for relief for trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114.[3] Plaintiff owns the Ken-Tool Marks. By defaulting, defendant has admitted its use of the Ken-Tool Marks without the authorization or consent of plaintiff by producing, advertising, distributing and/or selling products in commerce that bear the Ken-Tool Marks, and that such unauthorized use of the Ken-Tool Marks has caused and is likely to cause confusion among consumers regarding the origin and quality of the goods offered by defendants.

Accordingly, plaintiffs are entitled to default judgment on counts one and two for trademark infringement and counterfeiting of the Ken-Tool Marks in violation of 15 U.S.C. § 1114.

---

[3] In addition to the allegations in the complaint deemed admitted by defendant's default, plaintiff has also submitted declarations establishing that defendant is intentionally selling Counterfeit Tire Irons using the Ken-Tool Marks without plaintiff's authorization and that the Counterfeit Tire Irons are not genuine Ken-Tool products, resulting in consumer confusion. (*See* Doc. Nos. 14-2 (Declaration of Ben Graham) and 14-5 (Declaration of Christina Moser).)

### 2.  Federal trademark infringement and unfair competition (Count three)

In count three, plaintiff alleges that defendant's use of the Ken-Tool Marks, as deemed admitted in the complaint, violates 15 U.S.C. 1125(a).

Under 15 U.S.C. § 1125(a):

**(a)** Civil action
> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Under the Lanham Act, the same test is used for trademark infringement and unfair competition: likelihood of confusion. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (citing *Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)). Based upon the admitted factual allegations in the complaint as discussed above, defendant has used the Ken-Tool Marks in advertising, distributing and/or selling defendant's products, and has done so without plaintiff's consent or authorization. Defendant's Counterfeit Tire Irons have been and are likely to be mistaken for the genuine product offered for sale by the plaintiff, and result in the confusion of consumers, who will believe—and have believed—that defendant's counterfeit product is a genuine product originating from and approved by plaintiff. (*See* Doc. No. 1 ¶ 22, Doc. No. 14-2 ¶¶ 6, 7.)

10

Accordingly, defendant is liable under 15 U.S.C. § 1125(a) and plaintiff is entitled to default judgment with respect to its claim for unfair competition—count three—in violation of 15 U.S.C. § 1125.

### 3. Ohio Rev. Code § 4165.02/Common law unfair competition (Counts four and five)

The analysis of unfair competition claims under Ohio Rev. Code § 4165.02 and Ohio common law is the same as that for an unfair competition claim under the Lanham Act. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880–81 (S.D. Ohio 2007) (citing among authority *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003)). Accordingly, for the reasons discussed above, the Court concludes that plaintiff is entitled to default judgment against defendant on counts four and five with respect to its claims for unfair competition in violation of Ohio Rev. Code § 4165.02 and Ohio common law in connection with defendant's unauthorized use of the Ken-Tool Marks.

### B. Default Judgment—Damages

Well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, but not as to damages. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fid. and Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)). Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009) (citation omitted). Here, no hearing is necessary to determine damages in that plaintiff seeks statutory rather than actual damages and has demonstrated a basis for such an award. Moreover, defendant has been served with plaintiff's complaint, the Court's entry of default, and plaintiff's motion, but has failed to appear or otherwise

defend this action and, thus, would likely not participate in an evidentiary hearing if it occurred. *See Arthur v. Robert James & Assocs. Asset Mgmt., Inc.*, No. 3:11-cv-460, 2012 WL 1122892, at *2 (S.D. Ohio Apr. 3, 2012).

Plaintiff seeks statutory damages in lieu of actual damages pursuant to 15 U.S.C. § 1117(c) in the amount of $50,000.00 for each of the Ken-Tool Marks for a total of $100,000.00. (Doc. No. 14-1 at 16–20.) Plaintiff has established actual consumer confusion caused by XK's use of the Ken-Tool Marks. *Ohio State Univ.*, 16 F. Supp. 3d at 914 ("'[P]roof that the buying public was actually deceived is necessary in order to recover statutory damages under the Lanham Act.'") (quoting *Audi AG,* 469 F.3d at 542).

Section 1117(c)[4] provides that in a case involving the use of a counterfeit mark in connection with the sale, offer for sale, or distribution of goods, the Court may award statutory damages in an amount of not less than $1,000.00 or more than $200,000 per counterfeit mark per type of good sold as the court considers just. 15 U.S.C. § 1117(c)(1). Where the use of the counterfeit mark was willful, the Court may increase the statutory damage award to not more than $2,000,000.00 per counterfeit mark per type of goods sold. 15 U.S.C. § 1117(c)(2).

---

[4] 15 U.S.C. § 1117(c):

**(c) Statutory damages for use of counterfeit marks**
In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
    **(1)** not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
    **(2)** if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

The undisputed record establishes that the Ken-Tool Marks used by defendant are counterfeit marks as defined by 15 U.S.C. § 1116(d), and that the defendant used those counterfeit marks on goods for which the Ken-Tool Marks are registered. If the defendant has knowledge that its actions infringe the Ken-Tool Marks, its infringement is willful and 15 U.S.C. § 1117(c)(2) provides for enhanced statutory damages.

The Court finds that defendant's use of the Ken-Tool Marks on the Counterfeit Tire Irons is willful. First, defendant's Counterfeit Tire Irons are replicas of plaintiff's tire irons. (*See* Doc. Nos. 1-1; 1-2; 1-5 at 2, 5; 1-6 at 2; 1-7 at 2; 1-8 at 2.) Plaintiff's tire irons are marked with notices that its tire irons are protected by registered trademarks. (*See* Doc. Nos. 1 ¶ 34; 1-3 at 4; 14-2 ¶¶ 4, 7.) XK would have had to be aware that the Ken-Tool Marks were registered because it could not have copied plaintiff's tire irons and escaped such knowledge. Indeed, the Ken-Tool Word Mark which appears on Ken-Tool's tire irons identifies ownership of the trademark. Furthermore, XK continued to sell Counterfeit Tire Irons after its listing of the Counterfeit Tire Irons was removed from eBay pursuant to a Notice of Claimed Infringement sent by plaintiff's counsel to eBay. (*See* Doc. No. 14-5 ¶¶ 15–16.) *Microsoft Corp.,* 490 F. Supp. 2d at 880 ("A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness.") (citing *Ford Motor Co.,* 441 F. Supp. 2d at 852). Finally, "a court may infer willfulness from defendant's default." *Microsoft Corp.,* 490 F. Supp. 2d at 880 (citations omitted); *Tiffany (NJ) Inc. v. Luban,* 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, [defendant's] infringement is deemed willful[.]").

Plaintiff seeks statutory damages in the amount of $100,000.00—$50,000.00 for each of the Ken-Tool Marks. The Court has broad discretion in awarding statutory damages

13

within the limits established by Congress "as the court considers just." *Ford Motor Co.,* 441 F.Supp.2d at 852 (citing *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 (9th Cir. 1990)); 15 U.S.C. § 1117(c)(1). The statutory damages sought by Ken-Tool are well below the maximum that plaintiff could recover under the statute even without a showing of willfulness.

Accordingly, the Court concludes that Ken-Tool's requested statutory damages of $50,000.00 per counterfeit mark per type of counterfeit product for a total award of $100,000.00 is just, and awards $100,000.00 to Ken-Tool.

## C.  Injunctive Relief

In addition to statutory damages, the Lanham Act authorizes a court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a); *Ford Motor Co.*, 441 F. Supp. 2d at 852 ("In addition to money damages, a court may grant a trademark owner permanent injunctive relief.") (citing 15 U.S.C. §§ 1116, 1125(c)(2)). In its complaint and motion for default judgment, plaintiff seeks a permanent injunction against defendant's use of the Ken-Tool Marks. (Doc. No. 14-1 at 21–23.)

To obtain a permanent injunction, plaintiff must show that: (1) it has suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiff and defendant weighs in favor of a permanent injunction; and (4) it is in the public interest to issue an injunction. *Audi AG*, 469 F.3d at 550 (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)). The decision whether to grant a permanent injunction lies within the Court's discretion. *eBay Inc.*, 547 U.S. at 391. An evidentiary hearing is not required prior

14

to issuing a permanent injunction in the case of a default judgment because there are no factual issues in dispute. *Chanel v. Cong*, No. 10-cv-2086, 2011 WL 6180029, at *9 (W.D. Tenn. Dec. 8, 2011) (citing *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005)).

In this case, defendant's liability has been established. The defendant has infringed and counterfeited the Ken-Tool Marks by manufacturing, promoting, marketing, and/or selling Counterfeit Tire Irons on eBay and Amazon. (Doc. No. 1 ¶ 30.) Defendant's infringing activity is willful and continued even after defendant received notice of its unlawful conduct. (*See* Doc. No. 14-5 ¶¶ 15–16.) In addition to the monetary loss to plaintiff resulting from the sale of Counterfeit Tire Irons, defendant's Counterfeit Tire Irons are substantially inferior to plaintiff's high quality genuine Ken-Tool tire irons, and consumer confusion regarding the origin of defendant's counterfeit products causes irreparable damage to the goodwill and reputation of quality associated with the Ken-Tool Marks. (*See* Doc. No. 1 ¶¶ 22, 23, 33, 35–39; Doc. No. 14-2 ¶¶ 6–8.) *See Circuit City Stores, Inc. v. CarMax, Inc*., 165 F.3d 1047, 1056 (6th Cir. 1999) (irreparable injury that cannot be remedied by money damages follows from the likelihood of consumer confusion and risk to plaintiff's reputation) (citing *Wynn Oil Co. v. Am. Way Serv. Corp*., 943 F.2d 595, 608 (6th Cir. 1991)); *Ohio State Univ.*, 16 F. Supp. 3d at 914 ("It is well settled that 'proof of actual confusion is not necessary to obtain injunctive relief in a Lanham Act case, but it is obviously the most probative proof of the likelihood of confusion.'") (quoting *Frisch's Restaurant, Inc., v. Shoney's, Inc.,* 759 F.2d 1261, 1267 (6th Cir. 1985)). Moreover, defendant faces no hardship as a consequence of being enjoined from violating federal and state trademark laws; plaintiff on the other hand, will continue to suffer from

lost sales income and damage to the reputation and goodwill of the Ken-Tool Marks if defendant is not permanently enjoined from its illegal conduct. *See Audi AG*, 469 F.3d at 550 ("In balancing the hardships between each party, we note that [defendant] faces no hardship in refraining from willful trademark infringement, whereas [plaintiff] faces hardship from loss of sales."). Finally, it is in the public interest to enforce federal trademark laws and to prevent consumers from being misled and confused by defendant's marketing and sale of Counterfeit Tire Irons bearing the Ken-Tool Marks. There being no adequate remedy at law for plaintiff and no hardship on defendant if a permanent injunction is imposed, the Court concludes that the balance of these considerations weighs in favor of granting a permanent injunction, and injunctive relief is appropriate to prevent defendant from infringing and counterfeiting the Ken-Tool Marks.

Accordingly, the Court Orders that XK, and all of XK's successors, assigns, affiliates, agents, servants, employees and representatives, and all persons, firms, and corporations in active concert or participation with them who receive actual notice of this Memorandum Opinion and Order, are hereby ordered: (1) within thirty (30) days of being served this Memorandum and Order, to deliver all Counterfeit Tire Irons to Ken-Tool at XK's cost; and (2) are permanently enjoined and restrained from:

> i. advertising, selling, shipping, delivering, distributing, importing, exporting, or offering for sale the Counterfeit Tire Irons described herein;
>
> ii. imitating, copying, duplicating and otherwise making any use of the Ken-Tool Marks (U.S. Reg. Nos. 1,368,682 and 1,808,834) in connection with any goods or services;
>
> iii. using any simulation, reproduction, or any unauthorized copy or colorable imitation of the Ken-Tool Marks in connection with the promotion, advertisement, display, sale, offering for sale, shipping, importing, exporting, delivery,

distribution, transfer, returning, holding for sale, destruction, or other movement or marketing, of any product or service (including, but not limited to, tire irons);

iv. making any statement which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that Defendant is an authorized dealer of Ken-Tool products, an authorized seller of Ken-Tool products, or is otherwise authorized by or affiliated with Ken-Tool;

v. enabling access to any website, including but not limited to any third-party e-commerce platform or social media website, featuring any goods bearing any simulation, reproduction, or any unauthorized copy or colorable imitation of the Ken-Tool Marks;

vi. causing likelihood of confusion or injury to Ken-Tool's business reputation and to the distinctiveness of the Ken-Tool Marks by unauthorized use of the same;

vii. engaging in any other activity constituting unfair competition or infringement of the Ken-Tool Marks, or Ken-Tool's rights in, or to use or exploit, the same;

viii. importing into the United States any goods bearing any simulation, reproduction, or any unauthorized copy or colorable imitation of the Ken-Tool Marks;

ix. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above; and

x. assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (viii) above.

### D. Attorney Fees

Plaintiff seeks attorney fees under both the Lanham Act and Ohio Rev. Code § 4165.03(B). (Doc. No. 14-1 at 20–21.)

#### *Attorney fees under the Lanham Act*

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). For the reasons discussed above,

plaintiff has obtained default judgment and prevailed in its claims against defendant for infringement, counterfeiting, and unfair competition with respect to the Ken-Tool Marks.

"'[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019), (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014) (noting that the fee-shifting provision of the Lanham Act was "identical" to the fee-shifting provision of the Patent Act)). "District courts 'determine whether a case is exceptional in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Id*. Plaintiff argues that this case is exceptional because XK's conduct was willful and defendant failed to respond or otherwise defend this action. (Doc. No. 14-1 at 20–21.)

The Court finds that plaintiff's argument in support of finding this case to be exceptional is sufficient because defendant had actual notice of its infringing activity yet failed to cease using the Ken-Tool Marks and failed to respond to plaintiff's claims that defendant's use of the Ken-Tool Marks violated state and federal trademark law. *See Eagles, Ltd. v. Am. Eagle Found.,* 356 F.3d 724, 728 (6th Cir. 2004) (a Lanham Act case may be deemed exceptional for purposes of awarding attorneys' fees when the acts of infringement are malicious, fraudulent, willful, or deliberate) (citing *Hindu Incense v. Meadows,* 692 F.2d 1048, 1051 (6th Cir. 1982)); *see also CARSTAR Franchisor SPV LLC v. Collision Express of Ohio Inc.*, No. 2:19-cv-3282, 2020 WL 1956988, at *1 (S.D. Ohio Apr. 22, 2020) (finding trademark infringement case exceptional after granting default

18

judgment where defendant willfully infringed and failed to litigate plaintiff's claims) (citing *Coach v. Goodfellow*, 717 F.3d 498, 505–06 (6th Cir. 2013) (upholding the district court's award of attorneys' fees under the Lanham Act when the defendant had actual notice of the infringing activity yet continued to facilitate the activity and also failed to litigate the issue of liability)); *see also Chimney Safety Inst. of Am. v. First Call Chimney Serv., LLC*, No. 3:19-cv-705, 2020 WL 3065624, at *1 (W.D. Ky. June 9, 2020) ("Although 'willful, fraudulent, and deliberate' conduct does not automatically qualify as 'exceptional,' the Court finds that Defendants' continuous, flagrant conduct, despite repeated notices to cease and desist qualify as exceptional.") (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997)); *cf. Neal Techs., Inc. v. Mike's Bulletproof Diesel*, No. 1:21-cv-01023, 2021 WL 1082536, at *2 (W.D. Tenn. Mar. 18, 2021) (denying plaintiff's request for attorney fees and costs where plaintiff makes conclusory allegation without argument or explanation as to why the case is exceptional).

After determining the case is exceptional, the Court must determine whether plaintiff's requested fee award is reasonable. A reasonable fee must be "adequately compensatory to attract competent counsel" but avoid "producing a windfall for lawyers." *Gonter v. Hunt Valve Company, Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (emphasis removed). To make this determination, "[c]ourts begin with the 'lodestar formula,' which calls for multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Chimney Safety Inst. of Am.*, 2020 WL 3065624, at *1 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Under the lodestar method, the reasonable hourly rate is based upon the prevailing market rate in the relevant community for lawyers of comparable skill and experience. *Yellowbook Inc.*

*v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013). In considering whether the time expended is reasonable, the Court should "exclude excessive, redundant, or otherwise unnecessary hours." *U.S. Structures, Inc.*, 130 F.3d at 1193 (citing *Hensley*, 361 U.S. at 434). "The party requesting the fees has the burden of establishing that the hourly rate they seek is reasonable and must provide evidence of the hours worked and rates sought." *Dhadphale v. Delaney*, No. 2:18-cv-13780, 2020 WL 6685098, at *3 (E.D. Mich. Nov. 12, 2020) (citing *Yellowbook Inc.*, 708 F.3d at 848).

In support of its request for fees, plaintiff attaches a declaration from its primary counsel, Christina Moser ("Moser"). (Doc. No. 14-5.) Attorney Moser avers that she and an associate spent a total of 78.75 hours to investigate XK, prepare and file this action, address sales of infringing products on Amazon and eBay, and file for default judgment, and she provides an itemized billing record. (*Id.* ¶ 19; Doc. No. 14-12.) Moser further avers that because she has twenty-two years of experience and an LLM in intellectual property, and because her associate has two years of specialized experience in trademark law, their respective hourly rates of $585.00 and $370.00 are "reasonable." (Doc. No. 14-5 ¶ 19.)

With respect to counsel's hourly rate, plaintiff's counsel avers that her hourly rate and the hourly rate of her associate is "reasonable," but beyond this conclusory statement, provides no additional information to establish that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Bresser v. Total Quality Logistics, Inc.*, No. 1:12-cv-720, 2015 WL 7621478, at *3 (S.D. Ohio July 27, 2015) (under the lodestar method, in support of the requested hourly rate "'the plaintiff must produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the

20

community for similar services by lawyers of reasonably comparable skill[,] experience[,] and reputation.'") (quoting *Bryant v. Comm'r of Soc. Sec.,* 578 F.3d 443, 450 (6th Cir. 2009) (citing *Blum v. Stenson,* 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79, L. Ed. 2d 891 (1984))). Although plaintiff has provided a billing record in support of the number of hours expended,[5] because plaintiff has not provided any documentation to support the reasonableness of the hourly rate requested by plaintiff's primary counsel and her associate—beyond counsel's own conclusory statement that the rates are reasonable—the Court cannot determine at this time whether the total amount of attorney fees requested is reasonable.

Accordingly, plaintiff's request for attorney fees is denied without prejudice to later submitting a properly supported motion within twenty-eight (28) days of this Order. *See Zoya Co. v. Zoreya, Inc.*, No. 1:17-cv-2058, 2018 WL 3549839, at *1 (N.D. Ohio June 8, 2018) ("Because 15 U.S.C. § 1117(a) permits the recovery of attorney's fees in exceptional cases, Plaintiffs can seek attorney's fees. Plaintiffs have not, however, made the requisite showing to demonstrate that the fees sought are appropriate. Counsel has provided an itemized list of services provided and the hourly rate each attorney charged, but counsel has not included information demonstrating the prevailing market rate for similar services in the area. Counsel's own affidavit that its fees are reasonable does not suffice. The Court is, therefore, unable to determine the appropriate amount of fees under the lodestar method

---

[5] The Court has conducted a preliminary examination of the billing record provided in support of the attorney fee request (Doc. No. 14-12) and notes that the time entries on 11/2/2020, 11/7/2020, and 11/20/2020 pertain to the preparation of a motion to dismiss. Based upon the record and information now before the Court, a motion to dismiss appears to be unnecessary given that defendant defaulted and plaintiff sought and obtained a motion for default judgment.

as required.") (citations omitted); *see also Dynamic Mounting, LLC v. AV Express*, No. 1:18-cv-1931, 2019 WL 666928, at *4 (N.D. Ohio Feb. 19, 2019) (denying without prejudice plaintiff's motion for attorney fees where plaintiff failed to provide documentation needed by the court to conduct a lodestar analysis to establish reasonable attorney fees).

### Attorney fees under Ohio Rev. Code § 4165.03(B)

Plaintiff also seeks attorney fees under Ohio Rev. Code § 4165.03(B). Reasonable attorney's fees may be awarded under Ohio Rev. Code § 4165.03(B) where, as here, defendant's violation of Ohio Rev. Code § 4165.02 is willful.

> In determining the amount a party is entitled to recover as allowable fees, a court must assess "(1) the time and labor involved in maintaining [the] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of [the] litigation." *State ex rel. Montrie Nursing Home, Inc. v. Creasy* (1983), 5 Ohio St.3d 124, 128, 5 OBR 258, 262, 449 N.E.2d 763, 767.

*Yocono's Rest., Inc. v. Yocono*, 651 N.E.2d 1347, 1353 (Ohio Ct. App. 1994).

The allowance of attorney fees under § 4165.03(B) is discretionary—not mandatory—and the Court may require the introduction of evidence as to the reasonableness of fees requested. *See Cesare v. Work*, 520 N.E.2d 586, 591 (Ohio Ct. App. 1987). Here, plaintiff provided no corroborating support for the conclusory declaration of plaintiff's counsel that the hourly rates charged by counsel in the case are reasonable.

Accordingly, plaintiff's request for attorney fees under Ohio Rev. Code § 4165.03(B) is also denied without prejudice to later submitting a properly supported motion for attorney fees within twenty-eight (28) days of this Order. *See Hamilton v. Ball*, 7 N.E.3d 1241, 1264 (Ohio Ct. App. 2014) (finding that the trial court did not abuse its discretion by

awarding fees in an amount less than that requested by the appellant where the only evidence in support of the reasonableness of the $225 hourly rate was the affidavit of the trial attorney and no other corroborating evidence was presented to establish that $225 per hour is a reasonable and customary fee charged for similar legal services in the locality, and where the trial court relied on established caselaw to determine that $100 per hour was a reasonable rate under the circumstances).

### E.  Costs

Plaintiff also seeks recovery of its costs under 15 U.S.C. § 1117(a) in the amount of $713.69. (Doc. No. 14-1 at 21.) In support, plaintiff provides the declaration of its counsel, who avers that plaintiff has incurred costs in the amount of $400.00 in filing fees, $124.93 for attempted service of the complaint, $75.00 for service of the eBay subpoena, $1000.00 for fees to obtain substitute service on XK, and $13.76 for postage and delivery. (*See* Doc. No. 14-5 ¶ 20; Doc. No. 14-13.)

Section 1117(a) does not define costs, but courts have limited the costs available under § 1117(a) to costs available under 28 U.S.C. § 1920. *Powerhouse Marks LLC v. Chi Hsin Impex, Inc.*, 463 F. Supp. 2d 733, 740 (E.D. Mich. 2006) (limiting costs available under § 1117 to costs specified in 28 U.S.C. § 1920); *see also Profusion Indus., LLC v. Chem-Tek Sys., Inc.*, No. 5:16-cv-164, 2016 WL 7178731, at *9 (N.D. Ohio Dec. 9, 2016) (same) (collecting cases).

Recoverable costs under § 1920 that may be awarded by the Court are limited to the following:

    **(1)** Fees of the clerk and marshal;
    **(2)** Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

**(3)** Fees and disbursements for printing and witnesses;
**(4)** Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
**(5)** Docket fees under section 1923 of this title;
**(6)** Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

It appears that all of the costs that plaintiff seeks under § 1117 are not properly taxed under that statute (*e.g.*, postage). *See Audi AG v. D'Amato*, No. 04-cv-70665, 2007 WL 313537, at *3 (E.D. Mich. Jan. 30, 2007) (mailing costs are not covered by § 1920). With respect to recovering costs for the service of process and subpoenas, "district courts 'may tax costs for private process server fees to the extent that these private [ ] fees do not exceed the United States Marshals' fees.'" *True N. Energy, LLC v. Chicago Title Ins. Co.*, No. 3:10-cv-1100, 2011 WL 5362063, at *2 (N.D. Ohio Oct. 27, 2011) (quoting *Arrambide v. Wal–Mart Stores, Inc.,* 33 F. App'x 199, 203 (6th Cir. 2002)).

Plaintiff's request for an award of costs under § 1117 is denied at this time without prejudice to later submitting a properly supported motion for costs within twenty-eight (28) days of this Order.

## III.  CONCLUSION

For all of the foregoing reasons, Ken-Tool's motion for default judgment is granted in part and denied in part without prejudice as follows:

(1) Ken-Tool's motion for default judgment as to liability on counts one through five of the complaint against defendant XK for violating federal and state trademark laws is GRANTED.

(2) Ken-Tool's motion for default judgment for statutory damages in the total amount of $100,000.00 against XK is GRANTED.

24

(3) Ken-Tool's motion for default judgment as to attorney fees and costs is denied without prejudice and leave to submit a properly supported motion within twenty-eight (28) days of this Order.

(4) Ken-Tool's motion for default judgment as to the imposition of a permanent injunction against XK is GRANTED and defendant XK is permanently restrained and enjoined from using and infringing the Ken-Tool Marks as outlined herein.

A Judgment Entry will be separately published. This case is closed.

**IT IS SO ORDERED**.

Dated: July 28, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

25